## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BLUEFIELD DIVISION

JO BENOIT,               )
      Petitioner,       )
               )
v.                 )         **CIVIL ACTION NO. 1:16-00073**
               )
BARBARA RICKARD, Warden,  )
      Respondent.     )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Petitioner's Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in Federal Custody. (Document No. 2.)[1] By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.) Having examined Petitioner's Section 2241 Application, the undersigned finds, and hereby respectfully recommends, that Petitioner's Application should be denied.

## FACT AND PROCEDURE

Petitioner was convicted in the United States District Court for the Eastern District of Pennsylvania of twenty-five counts of Health Care Fraud in violation of 18 U.S.C. § 1347; twenty-five counts of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) and (c); eight counts of Distribution of a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c); seventeen counts of Distribution of a Controlled Substances to Persons Under the Age of 21 in violation of 21 U.S.C. § 859(a); and twenty-six counts of Aiding and Abetting in

---

[1]   Because Petitioner is acting *pro se*, the documents which she has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

violation of 18 U.S.C. § 2. <u>United States v. Benoit</u>, Case No. 2:11-cr-00617 (E.D.P.A. Sept. 27, 2012); (Document No. 10-1, p. 2.) By Amended Judgment entered on September 27, 2012, the District Court sentenced Petitioner to a 72 month term of imprisonment to be followed by a six year term of supervised release. <u>Id.</u>, pp. 2 - 7. The District Court also imposed a $7,600.00 special assessment and imposed restitution in the amount of $422,583.62. <u>Id.</u> The District Court directed that "[i]f possible, defendant is to participate in the BOP's Inmate Financial Responsibility Program and pay an amount of no less than $25 per quarter toward her financial obligations to the Court." <u>Id.</u>

On January 5, 2016, Petitioner, acting *pro se* and incarcerated at FPC Alderson, located in Alderson, West Virginia, filed her instant Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 2.) In her Petition, Petitioner first alleges that the BOP is improperly calculating her criminal monetary penalty payments through the Inmate Financial Responsibility Program ["IFRP"]. (<u>Id.</u>, p. 6.) Specifically, Petitioner argues that she is "technically indigent and remains in a pecuniary distress status." (<u>Id.</u>, p. 7.) Petitioner states that she earns $12 per month and has "no outside, ongoing sources of income." (<u>Id.</u>) Second, Petitioner complains that she is "not allowed a legal locker" beyond six months, which requires her "to store all legal papers in her regular locker, destroy it, or send it to outside sources." (<u>Id.</u>) As relief, Petitioner requests that the Court direct that the collection of all IFRP payments be ceased until Petitioner's re-entry into the community and direct the Respondent to provide Petitioner with a "legal locker as long as warranted." (<u>Id.</u>)

By Order entered on February 8, 2016, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ

of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 7.) On February 29, 2016, Respondent filed her Response to the Order to Show Cause. (Document No. 10.) Respondent argues that Petitioner's Petition should be denied based on the following: (1) "Petitioner failed to exhaust her administrative remedies" (Id., p. 3.); (2) "Petitioner's IFRP payments are consistent with the Sentencing Court's Order" (Id., p. 4.); and (3) "Petitioner is not entitled to a legal storage bin" (Id., pp. 4 - 5.). In support of her Response, Respondent attaches the following Exhibits: (1) A copy of Petitioner's "Amended Judgment in a Criminal Case" as filed in the Eastern District of Pennsylvania in Criminal Action No. 2:11-00617 (Document No. 10-1, pp. 2 - 8.); (2) A copy of Plaintiff's "Inmate Financial Responsibility Display Inmate Financial Data" (Id., pp. 9 - 10.); (3) A copy of Plaintiff's "IFRP 6 Month Team Worksheet" (Id., p. 12.); (4) A copy of Petitioner's "Inmate Financial Plan" (Id., pp. 14 - 15.); (5) A copy of Petitioner's "Sentence Monitoring Computation Data As Of 02-12-2016" (Id., pp. 17 - 20.); (6) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" (Id., pp. 22 - 37.); (7) A copy of Plaintiff's "Inmate Inquiry" (Id., pp. 39 - 44.); and (8) A copy of Petitioner's "Sales Invoice" from FPC Alderson (Id., pp. 46 - 69.)

By Order and Notice entered on March 1, 2016, the undersigned advised Petitioner of her right to file a Reply to Respondent's Response. (Document No. 11.) On March 16, 2016, Petitioner filed her Reply to Respondent's Response. (Document No. 12.) First, Petitioner continues to argue that her special assessment and restitution payments should be deferred until her release because she is "technically indigent." (Id.) Petitioner explains that her money was spent on replacement items that were lost during relocation and that essential items are not provide by the BOP. (Id.) Second, Petitioner asserts that the storage of her legal papers in her

regular locker leaves "little space" for required personal items. (Id.) Finally, Petitioner contends that she did exhaust her administrative remedies "via counselor and Unit Manger." (Id.)

## ANALYSIS

**1.      Exhaustion of Administrative Remedies:**

First, Respondent argues that Petitioner has failed to exhaust her administrative remedies. (Document No. 10-1, p. 3.) Respondent contends that even though a review of SENTRY "shows that Petitioner frequently utilizes the administrative remedy program," Petitioner did not file "any administrative remedies concerning her IFRP payment, nor has she filed any administrative remedies concerning a legal property bin." (Document No. 10, p. 3.) In Response, Petitioner merely argues that she did exhaust her "administrative remedies via counselor and Unit Manager."

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 F. Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court.   See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter

v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., §

542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

The undersigned finds that Petitioner failed to fully exhaust her administrative remedies prior to filing the instant action. Although Petitioner attempts to argue that she exhausted her administrative remedies "via counselor and Unit Manager," the undersigned finds that such steps were insufficient to establish full exhaustion. Thus, Petitioner appears to acknowledge that she completed only one-step (submitting an "Inmate Request to Staff Member") of the four-step grievance process. Furthermore, a review of the BOP's "Administrative Remedy Generalized Retrieval" reveals that Petitioner failed to fully exhaust her administrative remedies concerning her IFRP payment and her request for a legal property bin[2]. (Document No. 10-1, pp. 22 - 37.) Based on the foregoing, the undersigned finds that Petitioner failed to fully exhaust her administrative remedies and her Petition should be dismissed.

2.    **IFRP Calculation:**

Notwithstanding the foregoing, the undersigned will briefly consider Petitioner's IFRP

---

[2]   Notwithstanding Petitioner's failure to exhaust, the undersigned finds that Petitioner's request that FPC Alderson be required to provide her with a storage locker to be moot. The record reveals that Petitioner is no longer incarcerated at FPC Alderson. The BOP Inmate Locator indicates that Petitioner is currently incarcerated at FDC Philadelphia.

claim. Petitioner argues that the BOP is improperly calculating her criminal monetary penalty payments through the IFRP. (Document No. 2.) Specifically, Petitioner argues that she is "technically indigent and remains in a pecuniary distress status." (Id.) The Fourth Circuit has recognized that 18 U.S.C. § 3663 imposes a nondelegable, "core judicial function" upon the sentencing court to set the amount and time of monetary penalty payments. United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995). In the instant case, the sentencing court did not improperly delegate its authority to the BOP as suggested by Petitioner. In the Amended Judgment, the sentencing court imposed a $7,600.00 special assessment and imposed restitution in the amount of $422,583.62. (Document No. 10-1, pp. 2 - 7.) The District Court directed that "[i]f possible, defendant is to participate in the BOP's Inmate Financial Responsibility Program and pay an amount of no less than $25 per quarter toward her financial obligations to the Court." (Id.) Thus, the BOP did not usurp the sentencing court's authority to set the time and amount of the special assessment and restitution payments through IFRP. The IFRP is a program that provides an avenue for collection of payments toward a monetary penalty imposed by court order.[3] See 28 C.F.R. § 545.10-545.11; also see Webb v. Hamidullah, 2006 WL 1946441 (D.S.C. Jul. 11, 2006)(unpublished)(finding that IFRP is not an improper delegation of a judicial

---

[3]  The purpose of the IFRP is to "encourage each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. "The provisions of this rule apply to all inmates in federal facilities, except: Study and observation cases, pretrial detainees, and inmates in holdover status pending designation." Id. Section 545.11 provides that "[w]hen an inmate has a financial obligation, unit staff shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." 28 C.F.R. § 545.11. An "inmate is responsible for making satisfactory progress in meeting his/her financial responsibility plan and for providing documentation of these payments to staff." 28 C.F.R. § 545.11(b). An inmate's process in IFRP "will be reviewed each time staff assess an inmate's demonstrated level of responsible behavior." 28 C.F.R. § 545.11(c). "Refusal by an inmate to participate in the financial responsibility or to comply with the provisions of his financial plan ordinarily" results in the loss of certain advantages or privileges. 28 C.F.R. 545.11.

function because IFRP merely provides an inmate with a vehicle for ensuring that payment is made). The sentencing court ordered that the special assessment was "due immediately" and Petitioner shall pay "no less than $25 per quarter toward her financial obligations to the court." (Document No.10-1, pp. 7 - 8.) When a court orders that payment is due immediately, the court sets the required amount and timing for payment of the criminal monetary penalty. See United States v. Caudle, 261 Fed.Appx. 501, 504 (4th Cir. Jan. 10, 2008). Generally, the requirement that payment be made immediately is interpreted to require payment to the extent possible, and to begin as soon as possible. Coleman v. Brooks, 133 Fed.Appx. 51, 53 (4th Cir. 2005). The BOP is not limited to considering only an inmate's ability to earn wages while in prison, but may consider all funds received by an inmate. See 28 C.F.R. § 545.11(b)(stating that "[p]ayments may be made from institution resources or non-institution (community) resources"). Thus, the BOP through IFRP determined that Petitioner had the ability to pay the "$25 per quarter." Despite Petitioner's claim that she is indigent, a review of the record reveals that Petitioner received $100 via Western Union on October 9, 2015, $25 via Western Union on December 17, 2015, and $250 from an outside source on December 28, 2015. (Document No. 10-1, pp. 39 - 41.) As of February 12, 2016, Petitioner's trust fund account balance was $120.61, her six months deposits totaled $447.33, and her six months withdrawals totaled $468.25.[4] (Id.) Thus, the BOP properly considered all funds received by Petitioner when determining her IFRP payment. Based on the foregoing, the undersigned finds that Petitioner's challenge to the BOP's

---

[4]   A review of Petitioner's commissary receipts reveal that she spends a significant portion of her money on non-essential items such as snack foods, drink mixes, candy, eye shadow, lip gloss, lotion, and foundation. (Document No. 10-1, pp. 46 - 69.) During her incarceration at FPC Alderson, Petitioner paid only one payment of $25 towards her criminal monetary penalty totaling $430,183.62. (Document No. 10-1, p. 42.)

calculation of her IFRP payment to be without merit. See United States v. Watkins, 161 Fed.Appx. 337 (4th Cir. 2006)(IFRP does not constitute an improper delegation of authority by the courts); Martin v. United States, 2006 WL 231485 (N.D.W.Va. Jan. 31, 2006)(finding that "a sentencing court's order that a fine is due to be paid in full immediately is not an improper delegation of authority to the BOP, and the resultant 'payment schedule established by the BOP does not conflict with the sentencing court's immediate payment order'").

To the extent Petitioner is contending this to be a violation of her due process right, the undersigned finds her claims to be without merit. See Johnpoll v. Thornburgh, 898 F.2d 849, 851 (2nd Cir. 1990)(finding that the "IFRP program serves a valid penological interest and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation"). The compelled participation in IFRP is neither punitive in nature nor a violation of due process because it is reasonably related to a legitimate governmental objective of rehabilitation. Id.; also see Cupp v. Reed, 2009 WL 277554 (N.D.W.Va. Feb. 5, 2009)(finding that plaintiff failed to state a claim because "it is well-established that the BOP's inmate financial responsibility program is constitutional and that the negative consequences of not participating in the program are neither punitive nor do they violate the constitution"). Based on the foregoing, the undersigned finds that Petitioner's Petition should be dismissed.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of

Habeas Corpus by a Person in State or Federal Custody (Document No. 2) and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: September 28, 2016.

Omar J. Aboulhosn
United States Magistrate Judge

10